UDGE PATTERSON

Christopher M. Schierloh
CASEY & BARNETT, LLC
65 West 36th Street, 9th Floor
New York, NY 10018
(212) 286-0225
Attorneys for Plaintiff

14 CV 1072

RECEIVED
FEB 20 2014
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ZAYO GROUP, LLC.,

               Plaintiff,           **14 Civ.**

     - against -

                                     **COMPLAINT**

MICFO, LLC,

               Defendants.
------------------------------------------------------------X

Plaintiff, ZAYO GROUP, by its attorneys, CASEY & BARNETT, LLC, as and for its Complaint alleges upon information and belief as follows:

## JURISDICTION & VENUE

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. 1332 (a)(1), in that this case presents a controversy between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391 as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district, and the Defendant resides in this District.

## PARTIES

3.    Plaintiff, Zayo Group, is a Limited Liability Company with a place of business located at 400 Centennial Parkway, Louisville, Colorado and was the provider of leased fiber and internet bandwidth, as more fully described below.

4.    Defendant Micfo, LLC ("Micfo" or "defendant") is a Limited Liability Company with its principal place of business located at 154 Grand Street, New York, New York.

## RELEVANT FACTS

5.    Zayo is, and was, a facilities-based provider of technologically advanced, high bandwidth, fiber optic communications infrastructure, and related services, to communications carriers.  Zayo also provides high bandwidth Internet connectivity, co-location services, and a comprehensive Internet infrastructure management solution that includes design and architecture, hardware and software, installation, and ongoing management.

6.    On or about July 26, 2011, the parties entered into a Master Service Agreement ("MSA") which provided the general terms, conditions, and framework within which Defendant, Micfo, could purchase certain transport, dedicated internet access, dark fiber, and colocation services from plaintiff. (Attached hereto as Exhibit A).

7.    On or about August 3, 2011 and August 16, 2011, defendant, Micfo, submitted Service Order Forms numbered 257117 and 258837, respectively, to Plaintiff for the provision of dedicated internet access (DIA) and wavelengths for a term of 36 months. (Hereinafter "the Service Orders") (Attached hereto as Exhibit B).

8.    The MSA and the Service Order forms set forth the terms, conditions, and framework under which Plaintiff would provide the requested services and necessary equipment.

9.    Plaintiff provided the services and equipment as set forth in the Service Orders and MSA.

10.    Prior to the expiration dates of the Service Orders, Defendant, Micfo, advised Plaintiff that it was terminating its use of Plaintiff's services.

11.    Pursuant to the terms and conditions of the MSA, the Defendant is responsible for the payment of early termination charges for terminating its contractual obligations out of convenience.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR BREACH OF CONTRACT

12.    Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 11, as if herein set forth at length.

13.    The MSA and Service Orders constituted binding contracts supported by good and valuable consideration.

14.    Plaintiff rendered material performance of its duties and obligations under the MSA and Service Orders; satisfied or discharged all conditions precedent (if any) to defendant's performance under the MSA and Service Orders; and, therefore, was and is entitled to defendant's full and complete performance under the MSA and Service Orders.

15.    By virtue of the Defendant's materia breach/termination the MSA and Service Orders, defendant is liable to Plaintiff in the amount of at least  $285,000.00 plus pre-judgment and post-judgment interest, no part of which has been paid, although duly demanded.

## AS AND FOR A SECOND CAUSE OF ACTION
### FOR ACCOUNT STATED

16.     Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 15, as if herein set forth at length.

17.     Plaintiff rendered invoices, account statements, and/or notices to defendant reflecting the charges due and owing from Defendant to Plaintiff.

18.     The invoices, account statements, and/or notices which Plaintiff delivered to defendant established an account stated.

19.     Accordingly, there is due and owing from defendant to Plaintiff the sum of at least $285,000.00, plus pre-judgment and post-judgment interest, no part of which has been paid.

**WHEREFORE**, Plaintiff prays:

1.       That process in due form of law may issue against defendant citing it to appear and answer all and singular the matters aforesaid;

2.       That judgment may be entered in favor of plaintiff against defendant in the amount of $285,000.00, plus pre and post judgment interest;

3.       That this Court order defendant to pay plaintiff's costs and disbursements of this action, including but not limited to attorney's fees; and

4.       That this Court grant to plaintiff such other and further relief as may be just and proper.


Dated:   New York, New York
          February 20, 2014


                                        CASEY & BARNETT, LLC
                                        Attorneys for Plaintiff

                        By:    _____
                                        Christopher M. Schierloh
                                        65 West 36th Street, 9th Floor
                                        New York, NY 10018
                                        (212) 286-0225

# EXHIBIT A

## Master Service Agreement

This Master Service Agreement ("**MSA**") is made effective as of _July_ 26th, 2011 ("**Effective Date**") by and between Zayo Group, LLC, a Delaware limited liability company, and its affiliates and subsidiaries with an address of 400 Centennial Parkway, Suite 200, Louisville, CO 80027 ("**Zayo**") and Micfo, a corporation/limited liability company/partnership in the State of NY, with an address of __154 Grand Street New York, NY 10013___ ("**Customer**"). Each may be referred to herein as a "**Party**" and collectively as the "**Parties.**"

## ARTICLE 1 - GENERAL

**1.1**      **Agreement Structure.**  The purpose of this MSA is to provide general terms, conditions and a framework within which Customer may from time to time purchase certain transport, dedicated internet access, dark fiber, and colocation services ("**Services**") from Zayo for its use and/or for resale to its customers ("**End User Customers**"). Additional terms and conditions that apply to each type of Service are set forth in service schedules (each a "**Service Schedule**"), and each such Service Schedule executed by Customer shall become part of this Agreement.  In the event that Customer purchases a Service without executing the applicable Service Schedule, such Service shall be governed by Zayo's standard Service Schedule for that Service. This MSA, the applicable Service Schedules and Service Orders (as defined in Section 1.2 below) and any other attachments incorporated therein shall collectively be referred to as the "**Agreement.**" The Services and the respective Service Schedules available to Customer are: (i) Transport and Dedicated Internet Access Services, (ii) Dark Fiber Services, and (iii) Colocation Services.

**1.2**      **Orders for Services.**  Customer may request Zayo to provide a Service by submitting a service order in a form provided by Zayo from time to time ("**Service Order**") in accordance with the procedures set forth in this Agreement. Customer acknowledges and agrees that Customer is solely responsible for the accuracy of all Service Orders and other information that it provides to Zayo.  Each accepted Service Order shall incorporate by reference, and shall be subject to, the terms and conditions of this Agreement and the applicable Service Schedule.  Service Orders shall clearly set forth the term, pricing, service type and location(s), monthly recurring charge ("**MRC**"), non-recurring charge ("**NRC**"), and any additional specific terms for the Services.  All Service Orders shall be subject to availability and acceptance by Zayo.

**1.3**      **Order of Precedence.**  In the event of an express conflict between a term(s) of this MSA and the term(s) of any Service Schedule and/or Service Order, precedence will be given in the following order: (a) the Service Order but solely with respect to the Service covered by that Service Order and provided that an authorized representative of Zayo has executed such Service Order; (b) the Service Schedule but solely with respect to the Service covered by that Service Schedule; and (c) this MSA.

## ARTICLE 2 - PAYMENT TERMS

**2.1**      **Credit and Deposit.**  If requested by Zayo, Customer shall complete and submit Zayo's standard credit application. Zayo may from time to time conduct a review of Customer's credit rating and payment history.  Zayo may require Customer to pay a deposit before acceptance of a Service Order.  Additionally, for any existing Services, Zayo may require (i) Customer to pay a deposit or (ii) an increase in the existing deposit, upon the failure of Customer to submit payment of any amount by the Due Date as a condition to the continued provision of such existing Services.  Zayo shall refund any amount of deposit paid pursuant to this Section, less any amount for payments that Customer still owes to Zayo, when Zayo determines in good faith, based on Customer's credit rating and payment history, that such deposit is no longer necessary to ensure payment, but in no event later than after the termination of all Services and termination of this Agreement.

**2.2**      **Billing Commencement.**  Zayo may commence billing and Customer shall be liable for payment for Services upon the Service Activation Date as defined in the applicable Service Schedule.

**2.3**      **Invoicing and Payment Terms.**  Zayo will provide Customer with a monthly itemized invoice, in advance, for the Services together with all other charges due.  All amounts due Zayo are payable in full within thirty (30) days from date of invoice ("**Due Date**").  Invoice amounts not paid on or before the Due Date shall bear interest at the rate of one and one-half percent (1.5%) per month or the highest lawful rate, whichever is lower.  Unless otherwise stated in the Service Order or Service Schedule, Zayo shall invoice Customer for any NRC upon acceptance of a Service Order.

Zayo MSA (Ver. 5/2010)
**Confidential and Proprietary**

**2.4    Invoice Disputes.**  To the extent that Customer disputes any portion of an invoice, Customer shall notify Zayo in writing and provide detailed documentation supporting its dispute within forty-five (45) days of the invoice date or the Customer's right to any billing adjustment shall be waived.  In the event of a billing dispute, Customer shall timely pay all undisputed amounts.  If the dispute is resolved against Customer, Customer shall pay such amounts due plus interest as set forth in Section 2.3 from the date the payment was originally due. A dispute may not be based upon a claim that all or a portion of the charges for the Services were incurred by unauthorized users.

<h3 style="text-align:center">ARTICLE 3 - TERM</h3>

**3.1    MSA Term.**  This MSA shall be in effect for a period of five (5) years from the Effective Date ("**Initial Term**") unless terminated earlier as otherwise provided for in this MSA, and shall automatically renew for one (1) year periods thereafter (each a "**Renewal Term**" and together with the Initial Term, shall be referred to as the "**Term**") until either Party notifies the other Party of its intent not to renew the MSA at least sixty (60) days prior to the end of the Initial Term or any Renewal Term.  Notwithstanding the foregoing, in the event that any Service Order remains in effect following such termination, this MSA shall govern and continue in effect with regard to such Service Order until the termination of such Service Order.

**3.2    Service Order Term.**  The term of each Service Order shall commence on the Service Activation Date for such Service and continue for the period of time specified in that Service Order ("**Service Term**"), unless terminated earlier as otherwise provided for in this Agreement.  Thereafter, unless otherwise stated in the Service Order or Service Schedule, the term of each such Service Order shall automatically renew for one (1) year periods (each a "**Service Renewal Term**") pursuant to the terms of the Agreement until terminated by either Party upon thirty (30) days written notice prior to the end of the Service Term or the then current Service Renewal Term; provided, however, that Customer shall continue to be responsible for payment to Zayo for the Services to be terminated through the end of the thirty (30) day notice period plus any early termination charges which may apply.  Customer hereby acknowledges that it will not receive notice of a renewal cancellation date and expressly waives the application of any state or local law, rule, ordinance or regulation requiring such notice.  After the Service Term and during any Service Renewal Term, Zayo reserves the right to increase rates for any services provided thereunder upon at least thirty (30) days' notice.

<h3 style="text-align:center">ARTICLE 4 - EQUIPMENT AND INSTALLATION</h3>

**4.1    Zayo Equipment.**  Zayo, or its agent, may provide, install, maintain, repair, operate and control Zayo's equipment ("**Zayo Equipment**").  Zayo's Equipment shall remain the sole and exclusive property of Zayo, and nothing contained herein shall give or convey to Customer, or any other person, any right, title or interest whatsoever in Zayo's Equipment, notwithstanding that it may be, or become, attached to, or embedded in, realty.  Customer shall not tamper with, remove or conceal any identifying plates, tags or labels identifying Zayo's ownership interest in Zayo's Equipment.  Customer shall not adjust, align, attempt to repair, relocate or remove Zayo's Equipment, except as expressly authorized in writing by Zayo.  Customer shall be liable for any loss of or damage to Zayo's Equipment caused by Customer's negligence, intentional acts, or unauthorized maintenance and shall reimburse Zayo for the same, within thirty (30) days after receipt by Customer of a request for reimbursement.

**4.2    Zayo Access to Customer Premises.**  Where applicable, Customer shall provide Zayo with access to all Customer locations for purposes of installation, maintenance, and repair of Zayo Equipment on Customer premises.  Zayo shall provide reasonable notice under the circumstance to Customer prior to entering Customer's point of presence to install, maintain or repair any of the Zayo Equipment.  Customer will provide a safe place to work and comply with all applicable laws regarding the working conditions on the Customer premises.

**4.3    Customer Equipment.**  Equipment and service beyond the point of demarcation and/or interconnection between Zayo's facilities and terminal equipment and the wiring at the point of demarcations shall be the responsibility of Customer.  If Customer provides its own equipment, Zayo shall have no obligation to install, maintain or repair the equipment. If, on responding to a Customer initiated service call, Zayo and Customer jointly determine that the cause of the service deficiency was a failure, malfunction or the inadequacy of equipment other than Zayo's Equipment, Customer shall compensate Zayo for actual time and materials expended during the service call.

<h3 style="text-align:center">ARTICLE 5 - DEFAULT; SUSPENSION OF SERVICE</h3>

**5.1    Customer Default.**

Page 2 of 6

5.1.1   Customer is in default of this MSA if Customer (a) fails to cure any monetary breach within five (5) days of receiving notice of the breach from Zayo; (b) fails to cure any non-monetary breach of any terms of the agreement within thirty (30) days of receiving notice of the breach from Zayo; or (c) files or initiates proceedings or has proceedings filed or initiated against it, seeking liquidation, reorganization or other relief (such as the appointment of a trustee, receiver, liquidator, custodian or such other official) under any bankruptcy, insolvency or other similar law (each such event shall be a "**Customer Default**").

5.1.2   In the event of a Customer Default, Zayo may suspend Services to Customer until Customer remedies the Customer Default, or Zayo may terminate this MSA and/or any or all of the Services being provided hereunder. Zayo may at its sole option, but without any obligation, cure a non-monetary breach at Customer's expense at any point and invoice Customer for the same. These remedies are in addition to and not a substitute for all other remedies contained in this MSA or available to Zayo at law or in equity.

## 5.2   Zayo Default.

5.2.1   Zayo is in default of this MSA if Zayo fails to cure any non-monetary breach of any material term of this MSA within thirty (30) days of receiving written notice of the breach from Customer ("**Zayo Default**"); provided, however, that Customer expressly acknowledges that failure to meet the Service Availability Objectives in a Service Schedule is not subject to a claim of a Zayo Default. Customer's exclusive remedies for any failure of Zayo to meet the Service Availability Objectives are set forth in the applicable Service Schedule.

5.2.2   In the event of a Zayo Default, Customer may terminate the Services and the Agreement upon written notice to Zayo. Any termination shall not relieve Customer of its obligations to pay all charges incurred hereunder prior to such termination.

## ARTICLE 6 – IMPOSITIONS

All charges for the Services are exclusive of any Impositions (as defined below). Except for taxes based on Zayo's net income, Customer shall be responsible for payment of all applicable taxes that arise in any jurisdiction, including, without limitation, value added, consumption, sales, use, gross receipts, excise, access, bypass, franchise fees, rights of way fees or charges, license or permit fees, or other taxes, duties, fees, charges or surcharges (including regulatory fees), however designated, imposed on incident to, or based upon the provision, sale, or use of the Services ("**Impositions**"). Such Impositions may be shown on invoices as cost recovery fees. If Customer is entitled to an exemption from any Impositions, Customer is responsible for presenting Zayo with a valid exemption certificate (in a form reasonably acceptable to Zayo). Zayo will give effect to any valid exemption certificate provided in accordance with the foregoing sentence to the extent it applies to any Service billed by Zayo to Customer following Zayo's receipt of such exemption certificate. Customer shall indemnify, defend and hold Zayo harmless from payment and reporting of all such Impositions, including costs, expenses, and penalties incurred by Zayo in settling, defending or appealing any claims or actions brought against Zayo related to, or arising from, the non-payment of Impositions.

## ARTICLE 7 - LIMITATION OF LIABILITY

7.1   **General Limitations**. Zayo shall not be liable for loss or damage occasioned by a Force Majeure Event and to the extent allowed by law, for injury to or death of any person and for damage to or loss of any property arising out of or attributable to its operations and performance under this Agreement. Zayo's total liability for any and all causes and claims whether based in contract, warranty, negligence or otherwise shall be limited to the lesser of (i) the actual direct damages sustained by Customer; or (ii) an amount equivalent to the total MRC received by Zayo from Customer over the preceding three (3) months for the Service affected. No cause of action under any theory which accrued more than one (1) year prior to the filing of a complaint alleging such cause of action may be asserted by either Party against the other Party.

7.2   **Special Damages**. EXCEPT FOR A PARTY'S INDEMNIFICATION OBLIGATIONS SET FORTH BELOW IN ARTICLE 8 AND EXCEPT FOR CLAIMS ARISING FROM A PARTY'S INTENTIONAL MISCONDUCT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES WHATSOEVER, ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO, LOST PROFITS, LOST REVENUE, LOSS OF GOODWILL, LOSS OF ANTICIPATED SAVINGS, LOSS OF DATA, INCURRED OR SUFFERED BY EITHER PARTY, WHETHER IN AN

Zayo MSA (Ver. 5/2010)
Confidential and Proprietary

ACTION IN CONTRACT OR TORT, EVEN IF THE OTHER PARTY OR ANY OTHER PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  EXCEPT AS EXPRESSLY SET FORTH IN THIS MSA, ZAYO MAKES NO WARRANTY, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE AS TO THE DESCRIPTION, QUALITY, MERCHANTABILITY, COMPLETENESS OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE OF THE SERVICE, LOCAL ACCESS OR ANY OTHER MATTER, AND ANY SUCH WARRANTIES ARE HEREBY EXCLUDED AND DISCLAIMED.

**7.3     No Liability for Certain Actions.**  Zayo shall not be liable to Customer or its End User Customers for any claims or damages resulting from or caused by (a) unauthorized access to transmission facilities or premise equipment, or for unauthorized access to or alteration, theft, or destruction of data files, programs, procedure, or information through accident, wrongful means or devices, or any other method; (b) Customer's fault, negligence or failure to perform Customer's responsibilities; (c) claims against Customer by any other party (except for third-party claims indemnified under Article 8); (d) any act or omission of any other party, including End User Customers; or (e) equipment or services furnished by a third party, including End User Customers.  Zayo is not responsible for the content of any information transmitted or received through the Services.   Customer shall be solely responsible for all of the security and confidentiality of information it transmits using a Service.  Customer shall be solely responsible for all Customer support, pricing and service plans, billing and collections with respect to its End Users Customers, including obtaining all necessary legal or regulatory approvals to provide or terminate the provision of the services to its End User Customers. Zayo exercises no control over, and accepts no responsibility for, the content of the information passing through its network, or Customer equipment, and use of any such Service is at Customer's own risk.

## ARTICLE 8 - INDEMNIFICATION

**8.1     Indemnification.**  Each Party shall indemnify, defend and hold harmless ("**Indemnifying Party**") the other Party, its directors, officers, employees, and agents, successors and assigns ("**Indemnified Party**"), from all damages, costs, expenses and liabilities, including reasonable attorney's fees and disbursements, sustained in any action commenced by any third party in connection with the Indemnifying Party's performance of, or failure to perform, its obligations and duties under this Agreement except for those damages, costs, expenses and liabilities arising from the negligence or willful misconduct of the Indemnified Party; provided, however, that Zayo is not obligated to indemnify Customer, and Customer shall defend and indemnify Zayo hereunder, for any claims by any third party, including End User Customers, arising from services provided by Customer that incorporate any of the Services including but not limited to (a) violation of any applicable law by End User Customers; (b) damage to property or personal injury (including death) arising out of the acts or omissions of End User Customers; (c) termination or suspension of Services of Customer or End User Customers, due to a Customer Default; or (d) claims by a third party, including without limitation End User Customers, arising out of or related to the use or misuse of any Service.

**8.2     Indemnification Procedures.**  The Indemnified Party shall promptly notify the Indemnifying Party in writing of any such suit or claim, and shall take such action as may be necessary to avoid default or other adverse consequences in connection with such claim.  The Indemnifying Party shall have the right to select counsel and to control the defense and settlement of such claim; provided, however, that the Indemnified Party shall be entitled to participate in the defense of such claim and to employ counsel at its own expense to assist in handling the claim, and provided further, that the Indemnifying Party shall not take any action in defense or settlement of the claim that would negatively impact the Indemnified Party.  The Indemnified Party shall provide cooperation and participation of its personnel as required for the defense at the cost and expense of the Indemnifying Party.

## ARTICLE 9 - CONFIDENTIALITY

"**Confidential Information**" shall mean all information, including this Agreement, regarding the telecommunications needs of Customer and the Services that Zayo offers under this Agreement which is disclosed by one Party ("**Disclosing Party**") to the other Party ("**Receiving Party**"), to the extent that such information is marked or identified as confidential or proprietary.  Notwithstanding the foregoing, all written or oral pricing and contract proposals exchanged between the Parties shall be deemed Confidential Information, whether or not so designated.  Confidential Information is the property of the Disclosing Party and shall be returned to the Disclosing Party upon request.  Information that (i) is independently developed by the Receiving Party, (ii) is lawfully received by the Receiving Party free of any obligation to keep it confidential, or (iii) becomes generally available to the public other than by breach of this Agreement, shall not be considered Confidential Information.  A Receiving Party, including its officers, directors, employees, partners, affiliates, agents and representatives, shall hold all Confidential Information in confidence from the time of disclosure until three (3)

Page 4 of 6

years following its disclosure. During that period, the Receiving Party: (a) shall use such Confidential Information only for the purposes of performing its obligations under this Agreement; (b) shall reproduce such Confidential Information only to the extent necessary for such purposes; (c) shall restrict disclosure of such Confidential Information to employees that have a need to know for such purposes; (d) shall not disclose Confidential Information to any third party without prior written approval of the Disclosing Party except as expressly provided in this Agreement or as required by law; and (e) shall use at least the same degree of care (in no event less than reasonable care) as it uses with regard to its own proprietary or confidential information to prevent the disclosure, unauthorized use or publication of Confidential Information. In the event that the Receiving Party is required to disclose Confidential Information of the Disclosing Party pursuant to law, the Receiving Party will notify the Disclosing Party of the required disclosure with sufficient time for the Disclosing Party to seek relief, will cooperate with the Disclosing Party in taking appropriate protective measures, and will make such disclosure in a fashion that maximizes protection of the Confidential Information from further disclosure.

## ARTICLE 10 - FORCE MAJEURE

Neither Party shall be liable for any failure of performance hereunder due to causes beyond its reasonable control including, but not limited to, acts of third parties not under the direction or actual control of the Party delayed or unable to perform, acts of God, fire, explosion, vandalism, cable cut, flood, storm, or other similar catastrophe, any law, order, regulation, direction, action or request of the government, or any department, agency, commission, court, or bureau of a government, or any civil or military authority, national emergency, insurrection, riot, war, strike, lockout, or work stoppage (each, a "**Force Majeure Event**"). The Party claiming relief under this Section shall notify the other Party of the occurrence or existence of the Force Majeure Event and of the termination of such event.

## ARTICLE 11 - MISCELLANEOUS PROVISIONS

**11.1    Subject to Laws.** This Agreement is subject to all applicable federal, state and local laws, and regulations, rulings and orders of governmental agencies, including, but not limited to, the Communications Act of 1934, as amended, the Telecommunications Act of 1996, the Rules and Regulations of the Federal Communications Commission ("**FCC**"), Zayo's applicable tariffs, if any, and the obtaining and continuance of any required approval or authorization of the FCC or any governmental body. Either Party may terminate its obligations under this Agreement and/or a Service Schedule and/or a Service Order without liability if ordered to do so by the final order or ruling of a court or other governmental agency or if such order or ruling would make it impossible for either Party to carry out its obligations under this Agreement.

**11.2    Governing Law.** This Agreement shall be construed and enforced in accordance with, and the validity and performance hereof shall be governed by the laws of the State of Colorado.

**11.3    Prevailing Party.** In the event that suit is brought or an attorney is retained by either party to enforce the terms of this Agreement or to collect any money as due hereunder or to collect any money damages for breach hereof, the prevailing party shall be entitled to recover, in addition to any other remedy, the reimbursement of reasonable attorneys' fees, court costs, costs of investigation and other related expenses incurred in connection therewith.

**11.4    Relationship of Parties.** This Agreement does not create a partnership, joint venture or agency relationship between the Zayo and Customer. Neither Party shall have any authority to bind the other Party to any agreement, understanding or other instrument, in any manner whatsoever.

**11.5    Assignment; Binding Effect.** Customer shall not transfer or assign, voluntarily or by operation of law, its obligations under this Agreement without the prior written consent of Zayo. This MSA shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns. Each of the undersigned hereby state that he/she has full authority to enter into this MSA and hereby accepts this MSA on behalf of the companies identified below.

**11.6    Notices.** Notices under this MSA shall be in writing and delivered by certified mail, return receipt requested, or by nationally recognized courier to the persons whose names and business addresses appear below, and such notice shall be effective on the date of receipt, or refusal of delivery, by the receiving Party.

If to Zayo:

**Zayo Group, LLC**
Attn: General Counsel, Legal

Zayo MSA (Ver. 5/2010)
**Confidential and Proprietary**

400 Centennial Pkwy, Suite 200
Louisville CO 80027

**Billing Disputes:**

**Zayo Group, LLC**
Attn: Accounts Receivable
400 Centennial Pkwy, Suite 200
Louisville, CO 80027

**If to Customer:** Attention: Acounts

**[INSERT]** Micfo, LLC. 154 Grand Street, New York, NY 10013

**11.7    No Third Party Beneficiaries.** The representations, warranties, covenants and agreements of the Parties set forth herein are not intended for, nor shall they be for the benefit of or enforceable by, any third party or person not a Party hereto, including without limitation, End User Customers.

**11.8    Entire Agreement.** This Agreement constitutes the entire understanding between the Parties relating to the rights, duties and obligations granted and assumed herein.    Any prior agreements, promises, negotiations or representations regarding the subject matter hereof are of no force or effect. No alteration or variation of the terms of any provision shall be valid unless made in writing and signed by a duly authorized representative of Zayo and the Customer. In the event that any one or more of the provisions of this MSA shall for any reason be held to be invalid or unenforceable, the remaining provisions of this MSA shall be unimpaired, and shall remain in effect and be binding upon the Parties. The Services provided by Zayo are subject to the condition that they will not be used for any unlawful purposes. No course of dealing between the Parties and no failure to exercise any right hereunder shall be construed as a waiver of any provision hereof.

**11.9    Counterparts/Facsimile Signatures.** This MSA may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This MSA and any Service Schedule may be delivered by facsimile transmission and facsimile signatures shall be treated as original signatures for all applicable purposes.

| ZAYO GROUP, LLC | | CUSTOMER NAME | |
|---|---|---|---|
| Signature: | | Signature: | _Amir Golestan_ |
| Name: | _Christopher P. Yost_ | Name: | Amir Golestan |
| Title: | _General Counsel_ | Title: | Executive Director |

Zayo MSA (Ver. 5/2010)
**Confidential and Proprietary**

# EXHIBIT B



# Service Order Form

## Order Information

| | | | |
|---|---|---|---|
| **Account Name** | Micfo | **Billing Account ID** | |
| **Customer Name** | Amir Golestan | **Zayo Representative** | Dari Payrow |
| **Phone Number** | (212) 200-3333 | **Phone Number** | 678.331.8789 |
| **Email Address** | amir@micfo.com | **Email Address** | dari.payrow@zayoenterprise.com |

## New Service Order - 257117

| **A-Location (Customer)** | 1033 Jefferson St NW, 1st North Atlanta, GA 30318 | **Z-Location** | 56 Marietta St NW, 2nd Fl/Cage M24 Atlanta, GA 30303 |
|---|---|---|---|

| Contract Details | | Product Details | | Protection Details* | |
|---|---|---|---|---|---|
| Service Order ID | 257117 | Product Family | DIA | Core-Network Fiber Path Diversity | No |
| Order Type | New | Product Category | Ethernet | Core-Network Protection | No |
| Service Term | 36 | | | Diverse Laterals > 50 ft separation | No |
| MSA | zCon-00004980 | Bandwidth | 1000Mb | | |
| Customer PO | n/a | Circuit Options | GigE - Optical - Single Mode | | |

| Details | | Protection Details* | | Details | | Protection Details* | |
|---|---|---|---|---|---|---|---|
| Building Status | Fiber Only | Handoff | 2-fiber (optical) | Building Status | On-Net | Handoff | 2-fiber (optical) |
| CFA Provided By | Zayo | Entrance | Single | CFA Provided By | Zayo | Entrance | Single |
| CFA Location | Zayo On-Net | Local Fiber Path Diversity | No | CFA Location | Zayo On-Net | Local Fiber Path Diversity | No |
| | | Local Network Protection | No | | | Local Network Protection | No |

| Product | Service Item Desc | Type | Quantity | Amount |
|---|---|---|---|---|
| DIA | Interface Port Charge | MRC | 1 | $8,200.00 |
| DIA | Block of IP Addresses | MRC | 2 | $2,500.00 |
| | Monthly Recurring Charges Total | | | $13,200.00 |

**Expiration Date**   Pricing on this Service Order Form expires if Service Order is not signed prior to 8/25/2011

**Additional Technical Information**

1000 Mbps CIR Internet Access.

Quantity 2 - /19's of IP Addresses.

Circuit delivered at 1033 Jefferson St.

Customer must provide space and power at Jefferson St.

Customer responsible for any cross connects and fees

## Service Order ID(s):
257117

Customer Signature: *Amir Golestan*

Printed Name: Amir Golestan

Date: 08-03-2011

Zayo Signature:

Printed Name: *Christopher P. Yost*

Date: 8/3/11

Customer acknowledges that Customer is ordering the services described above ("Services") from Zayo Group, LLC, and/or its applicable affiliated and subsidiary companies ("Zayo"), and that local, state, and federal taxes and surcharges may apply. Orders requiring third party tariff services may be subject to additional charges as imposed on Zayo under the tariff. This Service Order Form shall be governed by and subject to the Master Service Agreement between Zayo and the Customer (the "MSA"). In the event that Customer has not executed a master service agreement with Zayo, this Service Order Form shall be governed by the terms and conditions of Zayo's standard wholesale Master Service Agreement, a copy of which is available upon request. This Service Order Form may only become binding if it is accepted in writing by an authorized Zayo representative, and service is contingent upon availability. By your signature on this Service Order Form, you acknowledge that you have read and that you understand the terms and conditions of this Service Order Form and that you are authorized by Customer to execute and deliver this Service Order Form. You further acknowledge and agree that upon Zayo's acceptance of this Service Order Form, Customer has entered into a binding obligation for the purchase of Services and that any attempt to cancel or terminate Services prior to the end of the Service Term shall result in the cancellation or termination charges set forth in the applicable MSA.

*Local Network Fiber Path Diversity indicates whether or not the ordered service will have a diverse physical fiber route within the local network(s). Core Network Fiber Path Diversity indicates whether or not the ordered service will have a diverse physical fiber route within the core network. Local Network Protection indicates whether or not the ordered service has both a working and protection channel within the local network(s) which will be electronically switched in the event of a failure. Core Network Protection indicates whether or not the ordered service has both a working and protection channel within the core network which will be electronically switched in the event of a failure. Local network is defined as the network between a Zayo POP or on-net ILEC Central Office in a market and the originating or terminating location of the Service. Core network is defined as the network between a Zayo POP or on-net ILEC Central Office and another Zayo POP or on-net ILEC Central Office.
**If Zayo is ordering a Cross-connect at an LSO on Customers behalf, Zayo will order either a managed cross connect or an unmanaged Cross-connect. An unmanaged LSO Cross-connect is a cable placed directly between the Zayo collocation and the Customer designated collocation. A managed LSO Cross-connect would typically run through LEC equipment and have DS3, OC3, OC12, OC48 or OC192 bandwidth.

Proprietary and Confidential



# Service Order Form

## Order Information

| | | | |
|---|---|---|---|
| **Account Name** | Micfo | **Billing Account ID** | |
| **Customer Name** | Amir Golestan | **Zayo Representative** | Dari Payrow |
| **Phone Number** | (212) 200-3333 | **Phone Number** | 678.331.8789 |
| **Email Address** | amir@micfo.com | **Email Address** | dari.payrow@zayoenterprise.com |

## New Service Order - 258837

### Service Details

| Contract Details | | Product Details | | Protection Details* | |
|---|---|---|---|---|---|
| Service Order ID | 258837 | Product Family | Wavelengths | Core-Network Fiber Path Diversity | Yes |
| Order Type | New | Product Category | Wavelength | Core-Network Protection | Yes |
| Service Term in Months | 36 | Bandwidth | 10G | Diverse Laterals > 50 ft separation | Yes |
| MSA | zCon-00004980 | Circuit Options | Wave - LAN PHY (Single Mode) | | |
| Customer PO | na | | | | |

| A Details | | A Protection Details* | | Z Details | | Z Protection Details* | |
|---|---|---|---|---|---|---|---|
| Address | 1033 Jefferson St NW 1st North Atlanta, GA 30318 | Handoff | 2-fiber (optical) | Address | 56 Marietta St NW 2nd Fl/Cage M24 Atlanta, GA 30303 | Handoff | 2-fiber (optical) |
| | | Entrance | Dual | | | Entrance | Dual |
| Building Status | Fiber Only | Local Fiber Path Diversity | Yes | Building Status | On-Net | Local Fiber Path Diversity | Yes |
| CFA Provided By | Zayo | Local Network Protection | Yes | CFA Provided By | Zayo | Local Network Protection | Yes |
| CFA Location | Zayo On-Net | | | CFA Location | Zayo On-Net | | |

| Product | Service Item Desc | Type | Quantity | Amount |
|---|---|---|---|---|
| Wavelengths | Wavelength - MRC | MRC | 1 | $5,150.00 |
| Wavelengths | Cross Connect | MRC | 9 | $350.00 |
| | Monthly Recurring Charges Total: | | | $8,300.00 |

| | |
|---|---|
| **Expiration Date** | Pricing on this Service Order Form expires if Service Order is not signed prior to 9/14/2011 |
| **Additional Technical Information** | 10 Gig Protected Ring. |

Each side will have Quantity of 10 - 1 GigE hand offs. 9 of these interfaces will be used for Transport and the 10th port for the Zayo GigE IP service.

Zayo to provide GigE cross connects within the Telx area
- NTT (Qty 1 GIG cross connect)
- Level 3 (Qty 2 – 1 GIG cross connects)
- Global Crossing (Qty 1 GIG Cross connect)
- Internap (Qty 1 Gig Cross Connect)

Plus there are an additional Qty 4 cross connects in the Telx area at 56 Marietta St.

Customer responsible for cross connects and fees at QTS facility and must provide space and power at QTS Jefferson St facility.

**Service Order ID(s): 258837**

Customer Signature: *Amir Golestan*

Printed Name:  Amir  Golestan

Date:  08-16-2011

Zayo Signature:

Printed Name:

Date:

Customer acknowledges that Customer is ordering the services described above ("Services") from Zayo Group, LLC, and/or its applicable affiliated and subsidiary companies ("Zayo"), and that local, state, and federal taxes and surcharges may apply. Orders requiring third party tariff services may be subject to additional charges as imposed on Zayo under the tariff. This Service Order Form shall be governed by and subject to the Master Service Agreement between Zayo and the Customer (the "MSA"). In the event that Customer has not executed a master service agreement with Zayo, this Service Order Form shall be governed by the terms and conditions of Zayo's standard wholesale Master Service Agreement, a copy of which is available upon request. This Service Order Form may only become binding if it is accepted in writing by an authorized Zayo representative, and service is contingent upon availability. By your signature on this Service Order Form, you acknowledge that you have read and that you understand the terms and conditions of this Service Order Form and that you are authorized by Customer to execute and deliver this Service Order Form. You further acknowledge and agree that upon Zayo's acceptance of this Service Order Form, Customer has entered into a binding obligation for the purchase of Services and that any attempt to cancel or terminate Services prior to the end of the Service Term shall result in the cancellation or termination charges set forth in the applicable MSA.

*Local Network Fiber Path Diversity indicates whether or not the ordered service will have a diverse physical fiber route within the local network(s). Core Network Fiber Path Diversity indicates whether or not the ordered service will have a diverse physical fiber route within the core network. Local Network Protection indicates whether or not the ordered service has both a working and protection channel within the local network(s) which will be electronically switched in the event of a failure. Core Network Protection indicates whether or not the ordered service has both a working and protection channel within the core network which will be electronically switched in the event of a failure. Local network is defined as the network between a Zayo POP or on-net ILEC Central Office in a market and the originating or terminating location of the Service. Core network is defined as the network between a Zayo POP or on-net ILEC Central Office and another Zayo POP or on-net ILEC Central Office.
**If Zayo is ordering a Cross-connect at an LSO on Customers behalf, Zayo will order either a managed cross connect or an unmanaged Cross-connect. An unmanaged LSO Cross-connect is a cable placed directly between the Zayo collocation and the Customer designated collocation. A managed LSO Cross-connect would typically run through LEC equipment and have DS3, OC3, OC12, OC48 or OC192 bandwidth.

Proprietary and Confidential